UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PATRICK HALL,

Plaintiff,

- against -

RFR HOLDING LLC,

Defendant.

23-cv-6051 (JGK)

**Memorandum Opinion and Order**

**John G. Koeltl, District Judge:**

The plaintiff, Patrick Hall, brought this action against his former employer, RFR Holding LLC ("RFR"), alleging breach of an employment verification provision of a Settlement Agreement. This Court determined in response to a motion for summary judgment that RFR had breached the verification provision of the Settlement Agreement on several occasions by failing to respond to requests for employment verification, but that Hall had not presented any evidence of damages from those breaches. Tr. of Oral Arg. on Cross-Mots. for Summ. J., ECF No. 149, 27-29. The Court scheduled a jury trial to determine what damages, if any, the plaintiff could prove by a preponderance of the evidence were caused by the defendant's breach of the verification provision. At the close of all the evidence, the defendant renewed a motion pursuant to Fed. R. Civ. P. 50(a) for judgment as a matter of law. Tr. at 563.[1] The Court reserved judgment on the motion to allow the motion to be fully briefed and to allow the jury to render a verdict. Id. at 574.

---

1 Citations to "Tr." refer to the transcript of the jury trial held in this proceeding between September 29 and October 2, 2026.

Having considered the parties' submissions, and having construed the evidence in the light most favorable to the plaintiff as the non-moving party, the Court concludes that the plaintiff has failed to establish by a preponderance of the evidence that he suffered any monetary damages that were caused by any failure by RFR to verify his employment. The plaintiff has failed to establish that any potential employer would have offered the plaintiff a position if only the defendant had responded to a request for employment verification, much less who such an employer was or what that position was, or what the compensation for such a position was. Any award of damages, other than nominal damages, could only be based on impermissible guesswork and speculation.[2] Therefore, the Court will grant the defendant's motion for judgment as a matter of law and enter a judgment for the plaintiff and against the defendant for nominal damages in the amount of $1.

I.

Fed. R. Civ. P. 50(a) permits a party to move for judgment as a matter of law after a party has been fully heard on an issue during a jury trial, but before the case has been submitted to the jury. In assessing a motion made pursuant to Fed. R. Civ. P. 50(a), "a district court may grant a motion for judgment as a matter of law where there is such a complete absence of evidence that no

---

[2] The jury returned a verdict finding RFR liable for $3.9 million in compensatory damages. Tr. 676-77. The parties stipulated that any motion by RFR seeking relief pursuant to Fed. R. Civ. P. 50(b) and/or Fed. R. Civ. P. 59 will be filed within twenty-eight (28) days after the Court's entry of judgment. Joint Letter to the Court, dated Oct. 9, 2026, ECF No. 277 at 1.

reasonable juror could find in favor of the non-moving party."[3] Wimmer v. Suffolk Cnty. Police Dep't, 176 F.3d 125, 134 (2d Cir. 1999); Hannex Corp. v. GMI, Inc., 140 F.3d 194, 203 (2d Cir. 1998) ("In ruling on a motion for judgment as a matter of law, a court must view the evidence in a light most favorable to the nonmovant and grant that party every reasonable inference that the jury might have drawn in its favor."). Therefore, judgment as a matter of law may be granted only if "(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against it." Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 289 (2d Cir. 1998).

"Under New York law, when a breach of contract occurs, a breaching party is liable for all direct and proximate damages which result from the breach." Williams v. Buffalo Bd. of Educ., No. 15-cv-255-FPG, 2025 WL 2047887, at *1 (W.D.N.Y. July 22, 2025). Contract damages are intended to place the injured party in the position that party would have occupied if the breaching party had performed the contract. Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 196 (2d Cir. 2003). They may not place the injured party in a better position. Sofi Classic S.A. de C.V. v. Hurowitz, 444 F. Supp. 2d 231,

---

[3] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

247 (S.D.N.Y. 2006). To obtain damages for a breach of contract, a plaintiff must prove by a preponderance of the evidence that "a defendant's breach *directly and proximately caused* his or her damages." Diesel Props S.r.l. v. Greystone Bus. Credit II LLC, 631 F.3d 42, 52-53 (2d Cir. 2011). In other words, the damages must be directly traceable to the breach, not remote or the result of other intervening causes. Rekor Sys., Inc. v. Loughlin, No. 19-cv-7767 (LJL), 2022 WL 3020148, at *7 (S.D.N.Y. July 29, 2022); Owusu v. New York State Ins., 655 F. Supp. 2d 308, 329 (S.D.N.Y. 2009). The damages cannot be based on speculation or guesswork. Williams, 2025 WL 2047887, at *2. In order to be recoverable, "damages must be not merely speculative, possible and imaginary, but they must be reasonably certain, and such only as actually follow or may follow from the breach of the contract." Najjar Indus., Inc. v. City of New York, 451 N.Y.S.2d 410, 414 (App. Div. 1982), aff'd sub nom. Najjar Indus., Inc. v. City of New York (Greenpoint Incinerator), 502 N.E.2d 997 (N.Y. 1986).

In this case, as explained below, any damages could only be assessed on the basis of guesswork and speculation. There was no evidence that any prospective employer, or anyone acting on behalf of a prospective employer, contacted RFR and that RFR failed to provide the verification required in response to any such inquiry. Moreover, the plaintiff has failed to point to the specifics of any potential job that he lost because RFR failed to respond to any request for verification. Rather, the plaintiff has relied on guesswork and speculation to support his claim for damages. But that is not sufficient.

## II.

Hall was employed by RFR as Vice President of Hotel Operations and Asset Management from June 2011 to March 2021. Joint Trial Exhibit ("JTX") 2 at 2. RFR and Hall entered into a Settlement Agreement, revised in April 2021, that contained the terms for Hall's departure from RFR. See JTX-3 at 1. The Agreement provided for certain compensation for Hall and also provided that Hall released RFR and its principals and agents from any claims that Hall may have had against them as of the date of the Agreement. Id. §§ 2, 3. The Agreement also included a verification provision in Section 4(b) that provided: "To the extent contacted by a third party requesting a reference, the Company [RFR] shall state only your [Hall's] dates of service and title, and make no further comment." Id. § 4(b). If contacted for a reference, the provision prevented RFR from providing an affirmative reference; RFR could only verify Hall's dates of service and title and make no further comment.

Hall contacted numerous potential employers over the months following his departure from RFR. Tr. 106-08. He obtained interviews in many cases, but never proceeded to the final stage of interviews. Id. 107-09, 115-20 (Hall testifying that although he progressed through multiple rounds of interviews with certain employers, he did not ultimately participate in final-round interviews). He conceded that no potential employer ever told him that he had not been offered a job or an opportunity to interview for a job because RFR had failed to provide the verification of his prior employment. Id. 225-26. Nor did Hall testify that any potential employer ever indicated to him that RFR had failed to

provide an employment verification. And Hall never introduced the testimony of any of the potential employers that interviewed him.

Hall points to various persons who contacted RFR to whom RFR did not verify his title and dates of employment, but in none of those cases, was the person who called a prospective employer or calling on behalf of a prospective employer. See Id. 163-66 (Hall testifying that the individuals he identified as having sought an employment verification from RFR were directed to do so by Hall). Therefore, the failure to provide verification on those calls could not have caused the plaintiff to lose any employment.

The plaintiff points to the testimony of Greg Coates, but that testimony does not support any damages. Coates is an executive recruiter. Id. 163. He had known Hall for almost 20 years, but Hall never retained him. Id. 164, 235. Hall approached Coates in February, 2023, almost 2 years after Hall had left RFR, and Coates offered to help Hall in finding a position. Id. 237. Coates sent information to about six prospective employers, but nothing came of those efforts. Id. 237-39. There is no evidence that any of those potential employers ever contacted RFR. Coates concluded that he would not be able to find any employment for Hall because "he had been out of work for too long." Id. 239.

At Hall's request Coates called RFR twice. Id. 240. Coates asked to be transferred to Beth Santos and explained that he was looking for employment verification for Hall. Id. 240-41. Santos was the Human Resources Manager for RFR. Id. 369. Santos did not return the call. Id. 241. It is plain that Coates called RFR at Hall's request and was not calling on behalf of any potential

employer. Id. 163-64, 240-41. Coates confirmed that he was "not calling RFR on behalf of a prospective employer," he was doing it "as a *favor*" to Hall, and that no prospective employer *ever* asked him to call RFR. Id. 247 (emphasis added). The failure to return that call could not have been the basis for any damages for Hall.

Santos also testified. Id. 368-98. Santos confirmed that she received only one employment verification request for Hall: a single voice mail in 2022 or 2023 that was transcribed to her email and that she testified she relayed to Robert Astarita, the Chief Financial Officer and Chief Operating Officer of RFR. Id. 301, 377-80, 395. The only evidence of the single voice mail Santos received relating to Hall was the call from Coates which was not a call from a prospective employer. Id. 240-41. Astarita recalled that he instructed Santos to respond to the single verification call she received. Id. 352-53. But whether it was Astarita or Santos who did not respond to the verification call, the Coates call was not a call by a prospective employer and the failure to respond to that call could not be the basis for any damages.

There was also evidence of three other instances of calls to RFR that went unanswered but none of those calls were from prospective employers or were linked to potential employment for Hall. After Coates failed to get a response to his calls, Hall asked that another executive recruiter, Marvin Love, call RFR in about March 2023, two years after Hall had left RFR. Id. 164-65. Despite his calls, Love, who did not testify at trial, allegedly received no response to his four or five calls. Id. 165. Hall also hired a private investigator by

the name of Charles Linder, who also called RFR, and whose call also was not returned. Id. 163, 166. There was also evidence that an entity referred to as "Robert Half Associates" ("Robert Half") left a voice mail message for Astarita that went unanswered, but there was no evidence of what Robert Half was or what, if any, employment opportunity it might have had for Hall. Id. 321-22. The plaintiff attempts to place the burden on RFR to prove that Robert Half was not calling for a prospective employer, see Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for J. as a Matter of Law ("Opp'n"), ECF No. 274 at 5, but the burden is on Hall to prove by a preponderance of the evidence that the breach of the verification provision was the proximate cause of his loss of employment and what the damages from that loss were, not simply that it was a possibility. See Diesel Props S.r.l., 631 F.3d, at 52 ("In order to recover from a defendant for breach of contract, a plaintiff must prove [damages] by a preponderance of the evidence"); Trireme Energy Holdings, Inc. v. Innogy Renewables US LLC, 706 F. Supp. 3d 409, 441 (S.D.N.Y. 2023), aff'd, No. 24-159-cv, 2025 WL 1374732 (2d Cir. May 13, 2025) (in an action for breach of contract, "[a] plaintiff must prove that a defendant's breach directly and proximately caused his or her damages.").

Hall also attempts to suggest that he lost an employment opportunity with Ian Schrager Corp. ("ISC"). Opp'n at 5. But the only evidence supporting that theory is that in January, 2023, Hall had conversations with ISC about an unspecified position, and subsequent meetings were canceled. Tr. 159-63;

see generally Plaintiff's Trial Exhibit ("PTX") 7. There is no evidence that ISC called RFR for an employment verification and RFR failed to provide it.

Hall testified about page three of a document that referred to "Would someone at RFR give a reference for [Hall]." PTX-7 at 3. But Hall had bargained for a verification of his employment and not a substantive reference. JTX-3 § 4(b). If asked for a reference, RFR was obligated to verify only Hall's "dates of service and title, and make no further comment." Id.

There was no testimony from anyone at ISC that ISC sought verification of the plaintiff's employment at RFR in January, 2023, that such verification was not provided, and that the failure to provide that verification was a proximate cause of the plaintiff's failure to obtain any position at ISC. Indeed, ISC was interested in hiring Hall for a position at ISC a year before, in April, 2022, but Hall thought that he was not right for the position. Tr. 202-203. ISC knew enough about Hall to discuss a position with him in 2022 which Hall did not think was an appropriate position. Id. ISC did not have to verify Hall's position with RFR and there is no evidence that ISC sought such verification in 2023 and failed to receive it.

The plaintiff could not fill the gaps in his proof with the testimony of his expert witness, Anthony Bird. Bird is a vocational rehabilitation counselor and vocational consultant. Id. 418. He was qualified as an expert in "vocational rehabilitation counseling." Id. 421. He testified about the kinds of jobs for which Hall was qualified and the availability of those jobs in the economy and the compensation for such jobs. Id. 432-36. He had no basis to testify about the

factual question of whether RFR failed to provide an employment verification to any potential employer or what the damages were with respect to that particular employer.

Finally, the plaintiff relied on the pattern of interviews he had with various employers which did not progress after initial stages and he asked the fact-finder to accept that, given his qualifications and the fact that he had obtained initial interviews, the failure to proceed to further stages must have been caused by the failure of RFR to verify his past employment with RFR. Opp'n at 7-9. The plaintiff specifically asked Astarita on several occasions whether Astarita received verification requests from potential hotel employers with which Hall had interviewed, and Astarita denied receiving such requests and there is no evidence in the record that Astarita ever received such requests. Tr. 325-28. It is well established that a jury cannot infer the opposite from a denial if there is no evidence of the opposite. Walker v. City of New York, 638 F. App'x 29, 31 (2d Cir. 2016) ("[I]t is hornbook law that a plaintiff does not carry his burden of proving a fact merely by having witnesses deny that fact and asking the jury to decline to believe the denials."); Bose Corp. v. Consumers Union of United States, Inc., 466 U.S. 485, 512 (1984) ("When the testimony of a witness is not believed, the trier of fact may simply disregard it. Normally the discredited testimony is not considered a sufficient basis for drawing a contrary conclusion."); Dyer v. MacDougall, 201 F.2d 265, 269 (2d Cir. 1952) (L. Hand, J.) ("[A]lthough . . . a party having the affirmative might succeed in convincing a jury of the truth of his allegations in spite of the fact

that all the witnesses denied them, we think it plain that a verdict would nevertheless have to be directed against him."). And the plaintiff has failed to adduce any evidence that any of the numerous potential employers that Hall interviewed ever called RFR for a request to verify his employment.

## CONCLUSION

Construing the evidence in the light most favorable to the plaintiff, a reasonable jury would not have a legally sufficient evidentiary basis to find for the plaintiff. There is no evidence that the plaintiff suffered any damages from the defendant's failures to comply with the verification provision of the Settlement Agreement. There is no evidence that any potential employer failed to pursue employment discussions with the plaintiff because of a failure by RFR to provide an employment verification in response to a request for such a verification, or any basis to conclude what damages resulted from such an alleged failure. Therefore, the Court grants the defendant's motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) and will enter a judgment for the plaintiff in the nominal amount of $1.

The Clerk of Court is respectfully requested to close ECF No. 272.

**SO ORDERED.**

**Dated:** **New York, New York**
**November 2, 2026**

**John G. Koeltl**
**United States District Judge**